UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARILYN WRENN,

       Plaintiff,                         Civil Action No. 05-72090

v.                                    HON.  AVERN COHN
                                    U.S. District Judge
                                    HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

     Plaintiff Marilyn Wrenn brings this action under 42 U.S.C. §405(g) challenging Defendant Commissioner's cessation of Supplemental Security Income (SSI) benefits.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

     On September 15, 1992,  Plaintiff filed an application for Supplemental Security Income (SSI), alleging disability due to alcoholism and an affective disorder.  On March 25, 1993, her claim was approved.   The  Social Security Administration (SSA) reviewed her case in 2002, determining that her disability had ceased as of October 1, 2002.   Plaintiff made a timely request for an administrative hearing which was held on September 16, 2004 in Detroit, Michigan (Tr. 111).   Administrative Law Judge (ALJ) Douglas A. Walker presided. Plaintiff, represented by attorney Stuart Johnson, testified. (Tr. 118-137).

Jacqueline Schabacker, acting as Vocational Expert (VE) also testified (Tr. 137-143).   On January 11, 2005, ALJ Walker, finding that Plaintiff's disability had ceased as of October 1, 2002, determined that Plaintiff retained the ability to perform unskilled work at the light exertional level (Tr. 18).   On April 1, 2005, the Appeals Council denied review (Tr. 3-5). Plaintiff filed for judicial review of the final decision on May 31, 2005.

## BACKGROUND FACTS

Plaintiff, born March 9, 1951 was age 53 when the ALJ issued his decision  (Tr. 118). Plaintiff concedes that the conditions leading to the 1993 disability finding have improved, but alleges that she now experiences a number of new and disabling conditions (Tr. 16).

### A.    Plaintiff's Testimony

Plaintiff, 53, testified that she had completed high school (Tr. 119).  She testified that over the past two years she had experienced severe knee and back trouble, reporting that her knees collapsed occasionally (Tr. 119).   She indicated that both upper and lower back discomfort prevented her from sitting or standing in one position for more than half an hour (Tr. 120-121).   She estimated that she could not walk more than one and a half blocks without difficulty (Tr. 121).   She reported that she continued to grocery shop and cook for herself (Tr. 124). She admitted that she continued to perform light laundry chores, adding that she sat and stood intermittently when laundering and folding clothes along with additional light housekeeping chores (Tr. 122, 133).

Plaintiff reported that her knees buckled when she attempted to climb stairs and that her ability to bend was limited to less than once every 15 minutes (Tr. 122-123).   She estimated that she could lift a maximum of five to eight pounds with both hands (Tr. 123). She indicated that in addition to back and knee problems, she experienced headaches and chest pain (Tr. 124).   She estimated that on a scale of one to 10, she experienced level "nine"

back and knee pain on a regular basis (Tr. 131).

Plaintiff indicated that she received regular checkups from a health clinic anywhere from every two weeks to every six months (Tr. 124). She testified that she lived with her daughter in an upper flat after having lost her own apartment (Tr. 126). Commenting that she had recently lost weight, Plaintiff, 5' 9", reported a current weight of 274 pounds (Tr. 127). She added that she took muscle relaxants, and diabetes and high blood pressure medication on a regular basis (Tr. 127). She denied receiving current mental health treatment (Tr. 136).

## B.    Medical Evidence

On June 7, 2002, Psychiatrist S. Rastogi, M.D., examined Plaintiff, noting that she denied depression, anxiety, depersonalization, or symptoms of psychosis (Tr. 95). Plaintiff further denied any recent mental health treatment (Tr. 95). She reported that she performed household chores, watched television, and showered daily (Tr. 95). Dr. Rastogi noted that Plaintiff currently experienced lumbosacral pain which created difficulty walking, noting further that a Wellness Plan Clinic currently prescribed Norgesic, Glucovance, Zestril, Procardia, and Motrin 800mg (Tr. 95). He assigned Plaintiff a GAF of 60[1] (Tr. 95).

In August, 2002 a consultive physician, Christopher Chang, M.D., recorded that Plaintiff complained of low back and right leg pain, noting that she had a history of diabetes

---

[1]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

mellitus, high blood pressure and degenerative arthritis  (Tr. 97).  Dr. Chang observed that Plaintiff exhibited tenderness in both knees with "very bad crepitation", but retained "pretty good" mobility, adding that she retained the ability to touch her toes in a sitting position (Tr. 98).  He found Plaintiff's gait and stance normal (Tr. 98).

In October, 2002, a consultive physician performed a Physical Residual Functional Capacity Assessment of Plaintiff's medical records, finding that she retained the ability to lift 20 pounds occasionally and 10 frequently (Tr. 100).  He found further that she could walk, sit, or stand for approximately six hours in an eight hour workday and retained an unlimited ability to push or pull in both the upper and lower extremities (Tr. 101).  The physician noted that although Plaintiff complained of and exhibited knee problems, her file did not contain x-rays of her knees (Tr. 101).  The report also found that Plaintiff retained the ability to climb, balance, stoop, kneel, crouch, and crawl on an occasional basis, but did not experience any manipulative, visual, communicative, or environmental limitations (Tr. 102-104). The report concluded by noting that Plaintiff's medical records did not contain a treating source assessment of her physical capacities (Tr. 106).

### C.   Vocational Expert Testimony

The ALJ posed the following hypothetical question to the VE:

"I want you to assume an individual of the Claimant's age, education, and past work experience.  And this individual would require work which is low stress, simple, unskilled, with one, two, or three-step instructions.  Who could only lift or carry 10 pounds frequently, 20 pounds occasionally.  Would require a sit-stand option.  Who should avoid frequent ascending and descending stairs. Who can perform pushing and pulling motions with her upper and lower extremities.  Let me amend that . . . [w]ho can perform pushing and pulling motions with her upper extremities, but not lower, within the aforementioned weight restrictions.  Who can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching. Who should avoid hazards in the workplace such as unprotected areas of moving machinery, heights, ramps, ladders, scaffolding, and on the ground unprotected areas of holes and pits.  Who could perform each of the following postural activities occasionally: Balancing, stooping, crouching, kneeling and

-4-

crawling.  But no climbing.  Do you have an opinion as to whether such a hypothetical individual could perform any occupations in the national economy or in the region?"

(Tr. 139-140).  VE Jacquelyn Schabacker testified that such an individual could perform the light, unskilled work of a packager (3,000 jobs), assembler (2,500 jobs), sorter (2,000 jobs), and inspector (1,500 jobs).   The VE stated further that if the hypothetical restrictions were modified to allow only ten pounds of lifting that such an individual could perform approximately 1,000 assembly positions, 1,000 inspection positions, and 2,000 packaging jobs (Tr. 141).  The ALJ then amended the hypothetical to avoid all pushing and pulling motions with the lower extremities to which the VE testified would half the number of packager, assembly, and sorter jobs available (Tr. 141).  The VE opined further that if such an individual were suffering from depression,  it would not prevent her from completing the above jobs (Tr. 141).  She stated further that if such an individual were required to take 30 minute naps two to three times a day,  all gainful employment would be precluded (Tr. 142).

### D.    The ALJ's Decision

ALJ Walker found that Plaintiff experienced the severe impairments of degenerative arthritis, diabetes mellitus, hypertension, lumbosacral strain, and obesity (Tr.16). Nonetheless, he determined that although Plaintiff experienced severe impairments, none met or equaled any impairment listed in Appendix 1 Subpart P, Regulations No. 4. (Tr. 16).

He concluded that Plaintiff  retained the residual functional capacity to perform "a wide range of light exertional work, and the full range of sedentary work" (Tr. 19).

The ALJ, finding that Plaintiff's testimony was only partially credible, noted that she continued to prepare her own meals, mop, wash dishes, and shop for food and clothing (Tr. 16).  The ALJ also cited Plaintiff's continued ability to walk a quarter of a mile to buy food, stating that "claimant's activities as she described them strongly indicate that she is able to

-5-

perform light exertional activities" (Tr. 16).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  Obesity

 Plaintiff argues that although the ALJ included obesity among her severe impairments at Step Two of his analysis, he neglected to incorporate the effects of her condition into the ultimate residual functional capacity ("RFC").  *Plaintiff's Brief* at 7-8. Citing SSR 01-01p, Plaintiff maintains that the ALJ failed to consider obesity's effect on her musculoskeletal, respiratory and cardiovascular body system listings. *Id.*

Pursuant to Social Security Ruling (SSR)  02-1p, obesity, standing alone does not constitute a disability but nonetheless should be considered in combination with other impairments in determining whether the claimant is disabled.  The administrative findings need not contain an explicit reference to the claimant's obesity if the decision, as a whole appears to have adopted any limitations resulting from obesity.  *See Rutherford v. Barnhart,* 399 F.3d 546, 552-53 (3d Cir.2005); *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir.2004).

 The omission of a full-blown obesity discussion in the administrative decision or its specific incorporation into the RFC does not mandate remand for a number of reasons.  First, Plaintiff did not allege limitations as a result of obesity at her hearing, raising the argument for the first time in this Court.  Likewise, although the two consultive physicians agreed that

she was obese (Tr. 95, 98),  neither  suggested that obesity in and of itself limited her work abilities.   Moreover, the occupational impact of Plaintiff's arthritis, diabetes mellitus, hypertension, lumbosacral strain, all of which can in part be attributable to her weight, were discussed at length in the administrative opinion and reflected in the RFC (Tr. 15-17).   The ALJ's exclusion of a obesity discussion does not mandate remand since pursuant to 20 CFR § 416.921(a), because Plaintiff has not established that obesity, other than presumably contributing to the independently severe impairments of degenerative arthritis, diabetes mellitus, hypertension, and lumbosacral strain,   limits her ability to perform light work.

### B.   Medical Vocational Guideline 201.12

Plaintiff, although conceding that she may be capable of sedentary work, argues that substantial evidence does not support the ALJ's conclusion that she could perform *light* work and should thus be found disabled due to the fact that she is closely approaching advanced age.   She submits her testimony that she cannot perform light work should be given the benefit of the doubt given the "paucity" of medical evidence to support the ALJ's conclusion.

20 CFR § 404.1563 (d) states, "If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." A finding that a claimant closely approaching advanced age with skills analogous to Plaintiff's could perform only sedentary work would generally direct a finding of disabled.  "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if plaintiff had a residual functional capacity (RFC) for sedentary work, § 201.09, but not if his RFC is light, § 202.10."  *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986).

 Pursuant to 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.12, Plaintiff notes correctly that due to her age, if she were limited to sedentary work, she would be deemed disabled under

the Grids.  However, Plaintiff's bases her claim on the false premise that substantial evidence does not support the ALJ's conclusion that she retains the ability to perform a range of *light* work.

To be sure, the Court acknowledges the sparse record evidence documenting either the presence or absence of disability.  The transcript contains only nine pages of treating physician's records.  The physician hired to perform the physical RFC analysis commented that although Plaintiff complained of knee problems, no knee x-rays had been performed (Tr. 101).  Under different circumstances the absence of evidence would have prompted this Court to recommend a remand, based on the fact that her level of knee function was critical in determining whether she perform light or sedentary work.  After careful consideration, the Court concludes that remand is not warranted for several reasons.

First and most obviously,  the VE's testimony suggests that even if Plaintiff's allegations of knee problems were *fully credited* she could nonetheless perform a limited range of light work.  Although the ALJ ultimately concluded that Plaintiff could perform pushing and pulling motions with her lower extremities, according to the VE's testimony, a substantial number of jobs existed at the light exertion level for an individual precluded from lower extremity pushing and pulling:

> ALJ: [Stating that in addition to the original and other added hypothetical restrictions] ". . . the individual should avoid pushing and pulling motions with her lower extremities."

> VE: "Okay.  That would affect the assembly position.  I would say reduce that by half.  And it would also affect the packager position.  I would say reduce that also by half, to 500.  It would not affect the inspection position.  And the sorter, it would affect that by half, to 500"

(Tr. 141).  Adjusting the VE's job numbers in response to the original hypothetical, the modified hypothetical's lower extremity limitations would nonetheless allow

-9-

Plaintiff to perform approximately 2,500 jobs (Tr. 141).[2]  Moreover, the ALJ addressed her purported knee problems in his hypothetical by including a sit/stand option, and a prohibition on frequent stair climbing (Tr. 140).

Next, although the fact that Plaintiff had not undergone imaging studies of her knees obliged the ALJ to draw his conclusions primarily on the basis of her daily activities and testimony, the absence of imaging studies cannot be used to discredit the ALJ's findings.  Although the administration bears the burden at Step Five of its analysis, pursuant to *Key v. Callahan,* 109 F.3d 270, 274 (6th Cir. 1997), "[c]laimant has the ultimate burden of proving the existence of a disability."; *Id.; citing to Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir.1984).  Further, although under different circumstances Plaintiff's lack of treating records could be attributed to her financial limitations, her medical records indicate that she regularly sought and received treatment and medication at a nearby clinic for other conditions;  those same treating sources would presumably have ordered imaging studies if warranted  (Tr. 86-94).  I note in closing that Plaintiff, who received disability payments for over nine years, admits that she is not longer afflicted with affective disorder or alcohol abuse, the conditions for which she was declared disabled in 1993.  Moreover,  Plaintiff's admission that she continues to shop, walk, cook, perform household chores, and visit with family members stands at odds with her allegations of continued disability.  The administrative decision stands comfortably within the "zone of choice" accorded to the fact-finder at the administrative  level.  Pursuant to *Mullen v. Bowen,*  800 F.2d 535,

---

[2]The 2,500 jobs cited also include a limitation on lifting not found in the ultimate RFC.  Thus, Plaintiff could presumably perform a greater number of jobs than the numbers cited by the VE which as stated reflect a preclusion on lower extremity pushing and pulling as well as sedentary lifting requirements (Tr. 140-141).

545 (6th Cir. 1986)(en banc), the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

-11-

S/R.  Steven Whalen
R.  STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  August 7, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 7, 2006.

S/Gina Wilson
Judicial Assistant