UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARILYN WRENN,
       Plaintiff                                              Civil Action No. 05-72090
    v.

JO ANNE BARNHART,                              Judge Avern Cohn
COMMISSIONER OF SOCIAL SECURITY,
       Defendant.

_____/

**<u>MEMORANDUM AND ORDER
ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

_____

### I. Introduction

This is a Social Security case. Plaintiff Marilyn Wrenn (Wrenn) appeals from the final determination of the Commissioner of Social Security (Commissioner) that she was no longer disabled and therefore was not entitled to Social Security benefits (benefits). An Administrative Law Judge (ALJ) conducted a hearing and determined that Wrenn was no longer entitled to benefits. The Social Security Administration's Appeals Council denied Wrenn's request to review the ALJ decision. Accordingly, the ALJ's decision is the final decision of the Commissioner.

Wrenn filed this action for judicial review under 42 U.S.C. § 405(g). The matter was referred to a magistrate judge, before whom Wrenn and the Commissioner filed cross-motions for summary judgment. The magistrate judge issued a report and recommendation (MJRR) that the ALJ's decision be affirmed. Wrenn filed objections to

the MJRR. Wrenn argues that the ALJ neglected to incorporate the effects of her obesity into her residual functional capacity (RFC), and that there was not substantial evidence that she could perform light work.

For the reasons that follow, Wrenn's motion for summary judgment is DENIED and the Commissioner's motion for summary judgment is GRANTED, and this case is DISMISSED.

## II. Background

### A. Procedural Background

On September 15, 1992, Wrenn filed an application for Supplemental Security Income, claiming that she was disabled due to alcoholism and an affective disorder. Her claim was approved on March 25, 1993. However, in 2002, the Social Security Administration reviewed her case and determined that her disability ceased as of October 1, 2002. Wrenn requested an administrative hearing which was held on September 16, 2004. Wrenn and Vocational Expert Jacqueline Schabacker (Schabacker) testified at the hearing. On January 11, 2005, the ALJ found that Wrenn's disability had ceased as of October 1, 2002, and determined that Wrenn had the ability to perform unskilled work at the light exertional level. The Appeals Council denied review, and Wrenn subsequently filed for judicial review of the ALJ decision on May 31, 2005.

### B. Factual Background

The MJRR accurately set forth the facts, most of which are reproduced below.

#### 1. Wrenn's Testimony

Wrenn, born March 9, 1951, was 53 years old when the ALJ issued his decision.

She completed high school.  She testified to experiencing severe knee and back trouble, and reported that her knees collapsed occasionally.  She indicated that her upper and lower back pain prevented her from sitting or standing in one position for more than thirty minutes.  She estimated that she was unable to walk more than one and a half blocks without difficulty.  Wrenn also reported that her knees buckled when she tried to climb stairs, and that she could not bend her knees more than once every 15 minutes.  She estimated that she could lift a maximum of five to eight pounds.  She also indicated that she experienced headaches and chest pain.  However, she continued to do her own grocery shopping and cook for herself.  Further, she admitted performing light laundry and housekeeping chores, but she had to sit and stand intermittently to accommodate her back pain.

Wrenn received regular medical checkups anywhere from every two weeks to every six months.  She is 5' 9" tall, and reported that she weights 274 pounds.  She added that she took muscle relaxants, as well as medications for diabetes and high blood pressure.  She denied receiving any treatment stemming from mental health problems.

### 2. Medical Evidence

Wrenn was examined by psychiatrist S. Rastogi, M.D. (Dr. Rastogi) on June 7, 2002.  Dr. Rastogi noted that Wrenn was in denial regarding depression, anxiety, depersonalization, or symptoms of psychosis.  Dr. Rastogi also noted that Wrenn experienced lumbosacral pain that made walking difficult, and that Wrenn had prescriptions for Norgesic, Glucovance, Zestril, Procardia, and Motrin 800mg.  Dr.

Rastogi assigned Wrenn a GAF score of 60,[1] indicating moderate mental health symptoms.

Wrenn was also examined by consultive physician Christopher Chang (Dr. Chang) in August, 2002. Dr. Chang noted that Wrenn complained of lower back and right leg pain, and that she had a history of diabetes, high blood pressure, and degenerative arthritis. Dr. Chang further observed that Wrenn had tenderness in both of her knees with "very bad crepitation,"[2] but that she retained "pretty good" mobility and could touch her toes in a sitting position.

A second consultive physician[3] performed a Physical Residual Functional Capacity Assessment (RFC) of Wrenn's medical records in October of 2002, and found that she could lift 20 pounds occasionally and 10 pounds frequently. This doctor also found that Wrenn could walk, sit, or stand for approximately six hours in an eight hour workday and had an unlimited ability to push or pull with both her arms and legs. The report noted that Wrenn's file did not include x-rays of her knees, so her complaints in this regard could not be verified. The report also found that she had the ability to climb, balance, stoop, kneel, crouch, and crawl on an occasional basis, and did not experience any manipulative, visual, communicative, or environmental limitations. Finally, the report noted that Wrenn's records did not include a treating source assessment of her

---

[1] A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders–Text Revision at 34 (DSM-IV-TR) (4th ed. 2000).

[2] Crepitation is the sound of bone grating upon bone due to an absence of cartilage.

[3] The doctor's report appears at page 100 of the transcript index. However, the doctor's signature is not legible so she is not named in this memo.

physical capacities.

### 3. Vocational Expert Testimony

The ALJ posed the following question to Vocational Expert Schabacker:

I want you to assume an individual of the Claimant's age, education, and past work experience.  And this individual would require work which is low stress, simple, unskilled, with one, two, or three-step instructions.  Who could only lift of carry 10 pounds frequently, 20 pounds occasionally.  Would require a sit-stand option.  Who should avoid frequent ascending and descending stairs.  Who can perform pushing and pulling motions with her upper and lower extremities.  Let me amend that...[w]ho can perform pushing and pulling motions with her upper extremities, but not lower, within the aforementioned weight restrictions.  Who can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching.  Who should avoid hazards in the workplace such as unprotected areas of moving machinery, heights, ramps, ladders, scaffolding, and on the ground unprotected areas of holes and pits.  Who could perform each of the following postural activities occasionally: Balancing, stooping, crouching, kneeling and crawling.  But no climbing.  Do you have an opinion as to whether such a hypothetical individual could perform any occupations in the national economy or in the region?

Schabacker answered that such an individual could perform the light, unskilled work of a packager (3,000 jobs), assembler (2,500 jobs), sorter (2,000 jobs), and inspector (1,500 jobs).  Schabacker also stated that if the hypothetical was altered to allow lifting of only 10 pounds, such an individual could perform 1,000 assembly jobs, 1,000 inspection jobs, and 2,000 packaging jobs.  Further, if the hypothetical was modified to avoid pushing and pulling motions with the lower extremities, such a change would cut in half the number of available packager, assembler, and sorter jobs.  Finally, Schabacker testified that depression would not be a barrier to performing any of the above jobs.

### 4. The ALJ's Decision

The ALJ found that Wrenn was severely impaired by degenerative arthritis, diabetes, hypertension, lumbosacral strain, and obesity.  However, he found that none

of these impairments met or equaled any of the impairments listed in Appendix 1 Subpart P, Regulation No. 4. Further, he found Wrenn's testimony only partially credible, and noted that she prepared her own meals, mopped, washed dishes, shopped for food and clothing, and could walk a quarter mile. Therefore, the ALJ stated that "claimant's activities as she described them strongly indicate that she is able to perform light exertional activities." The ALJ concluded that Wrenn retained the functional capacity necessary to perform "a wide range of light exertional work, and the ful range of sedentary work."

### III. Standard of Review

Judicial review of a Social Security disability benefits application is limited to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainerd v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantiality of the evidence must be based upon the record taken as a whole. Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). "[T]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports conclusions reached by the ALJ." Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The portions of the MJRR that the claimant finds objectionable are reviewed de novo.

See 28 U.S.C. § 636(b)(1)(C); Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

## IV. Discussion

Wrenn claims that the ALJ's decision properly included obesity among her severe impairments, but neglected to incorporate the effects of her condition into her RFC; therefore, the decision was not based on substantial evidence that she could perform light work.

### A. Framework for Disability Determinations

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will qualify as "disabled" if, in light of age, education, and work experience, she is unable to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In identifying whether claimants are "disabled," the Social Security Administration applies the following five-step sequential evaluation process:

> 1) whether the claimant worked during the alleged period of disability;
> 2) whether the claimant has a severe impairment;
> 3) whether the claimant has an impairment that meets of equals the requirements of an impairment listed in the regulations;
> 4) whether the claimant can return to past relevant work; and
> 5) if not, whether the claimant can perform other work in the national economy.

20 C.F.R. § 416.920(a).

### B. Obesity

Wrenn argues that the ALJ included obesity among her severe impairments in

step two of the sequential process, but neglected to incorporate the effects of this condition into her RFC in that he failed to consider how obesity effected her musculoskeletal, respiratory, and cardiovascular systems.

Obesity alone does not constitute a disability, but it should be considered in combination with other impairments in determining if the claimant is disabled. S.S.R. 02-1P, available at 2000 WL 628049 (2002). However, administrative findings need not explicitly reference the claimant's obesity if the decision as a whole appears to adopt any of the limitations that result from obesity. Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3rd Cir. 2005) (citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)).

The magistrate judge found that the ALJ's failure to discuss Wrenn's obesity in a detailed manner did not warrant remand for several reasons. First, Wrenn did not allege limitations based on obesity before the ALJ. Second, neither of the two consultive physicians suggested that obesity limited Wrenn's ability to work in and of itself. Third, the impact of Wrenn's arthritis, diabetes, hypertension, and lumbosacral pain, all of which can be attributed to her obesity, where discussed in the ALJ's decision and reflected in her RFC.

In her Objections to the MJRR, Wrenn says that the ALJ did not follow "the bare minimal requirements" of S.S.R. 02-1P, which require consideration of the combined effects of obesity and other impairments when computing the RFC. However, in Rutherford and Skarbek, the Third and Seventh Circuits declined to follow this reasoning because the ALJ decision considered the plaintiff's medical impairments that resulted from obesity. In such situations, remand would not change the outcome of the case. This is sound logic. Further, Wrenn has not established that her obesity,

independent of her other impairments, in any way limits her ability to do light work. Therefore, the ALJ did not improperly fail to consider obesity in combination with her other ailments.

### C. Ability to Perform Light Work

Wrenn concedes that she may be able to perform sedentary work, but argues that there is not substantial evidence supporting the ALJ's decision that she could perform light work. Therefore, Wrenn says she should be found disabled because she is approaching an advanced age. Further, she says that her testimony that she is unable to perform light work should receive the benefit of the doubt because there is a "paucity" of medical evidence supporting the ALJ's decision.

Where an individual is "closely approaching advanced age (age 50-54)," the ALJ will consider that "age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(d). The "grid" states that a claimant will be found disabled if she has an RFC for sedentary work, but not if her RFC is light. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.09-201.10.

The magistrate judge agreed that because of Wrenn's age, if she were limited to sedentary work, she would be "disabled" pursuant to 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.12. However, the magistrate judge found that substantial evidence supported Wrenn's ability to do *light* work, rather than *sedentary* work. Therefore, the magistrate judge found that Wrenn's age did not support a finding of disability.

The magistrate judge went on to note the sparseness of evidence regarding disability.[4] Specifically, the physician that performed the physical RFC analysis noted

---

[4] The record contains a mere nine pages of treating physician's records.

that no knee x-rays had been performed. The magistrate judge stated that this sparseness could, under different circumstances, prompt a remand.  But he declined to do so because here VE Schabacker's testimony[5] established that even if Wrenn's knee problems were fully credited, she could nonetheless perform a limited range of light work in a substantial number of existing jobs.

In her objections, Wrenn first argues that she is unable to do light work.  She bases this on Dr. Chang's finding that she had tenderness and "very bad crepitation" in her knees.  She also bases her argument on non-medical evidence demonstrating that she can only stand for half an hour without her knee buckling, can only walk one and a half blocks, and can walk four or five blocks to buy groceries but needs a ride to get back home.

Wrenn's arguments must fail.  As the magistrate judge noted, if one fully credits Wrenn's knee problems, she is still capable of light work.  VE Schabacker's testimony shows that Wrenn can perform certain jobs regardless of her ability to push and pull with her legs.  Thus, she does not need to walk or stand to work such jobs.  Wrenn counters this conclusion by stating that she cannot stand, sit, or walk for six hours in an eight hour work day.  However, she provides no evidence from the record to support this conclusory statement.  Further, the record specifically notes that is capable of

---

[5] ALJ: [Stating that in addition to the original and other hypothetical restrictions] "...the individual should avoid pushing and pulling motions with her lower extremities."

VE: "Okay.  That would affect the assembly position. I would say reduce that by half.  And it would also affect the packager position.  I would say reduce that also by half, to 500.  It would not affect the inspection position.  And the sorter, it would affect that by half, to 500."

sitting, standing, or walking for six hours in an eight hour work day (Tr. 101).  Therefore, there is substantial evidence in the record supporting the ALJ's determination that Wrenn is capable of performing light work.

### V. Conclusion

For the foregoing reasons, the findings and conclusions of the magistrate judge are adopted by the Court.  The ALJ's decision is supported by substantial evidence.
SO ORDERED.


        s/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE


Dated:  October 5, 2006


I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, October 5, 2006, by electronic and/or ordinary mail.

        s/Julie Owens
        Case Manager, (313) 234-5160